BURBANK & SON v. McCLUER & CO. AND TRUSTEES.

A, owning personal property, gave to B a mortgage of the same to secure a debt he owed him, after which he procured an insurance upon said property, and had the policy issued to and in the name of A, but payable in case of loss to B, as his interest might appear. Afterwards B bought one undivided half of this property, giving up the mortgage debt in part payment for the same, and entered into partnership with A in business and in the use of said property. *Held*, that there was no need for any transfer or assignment of the policy of insurance; and that in case of loss, the creditors of the firm would hold the funds in the hands of the insurance company upon the trustee process in preference to the creditors of either of the individual partners.

ASSUMPSIT, by F. L. Burbank & Son against J. G. McCluer & Co., principals, and National Fire and Marine Insurance Co., German Insurance Co., trustees; also, by James P. Ferry against James G. McCluer and same trustees, and other similar cases.

The only question upon which the opinion of the court was desired in these cases was, whether the creditors of the firm of McCluer & Co. (composed of James G. McCluer and Isaiah S. Livingston), or the creditors of James G. McCluer in his individual capacity, are entitled to the preference in the distribution of the funds in the hands of the trustees, by virtue of the attachments thereof that have been made in said actions; and the following facts were agreed upon for the purpose of settling this question, with the right to either party to go to the jury thereafter on any question material, if they so elected.

On November 22, 1872, James G. McCluer owned a lot of machinery, tools, fixtures, and stock for the manufacture of sash and blinds, situated in Hopkinton. On that day he hired of said Livingston the sum of $500, and gave him a mortgage of said property to secure him for said loan; and on the 26th day of the same November he caused the said property to be insured for the sum of $800 in the National Fire and Marine Insurance Co., and for the additional sum of $800 in the German Insurance Co. Each policy was made in the name of said McCluer, but was made payable, in case of loss, to Isaiah S. Livingston, as his interest may appear.

On March 1, 1873, said Livingston bought of the said McCluer one half of all the property covered by said insurance, paying him $2,000 therefor,—a part by cancelling the loan aforesaid, and the balance in cash,—and entered into copartnership with him, under the firm name of J. G. McCluer & Co., by the terms of which copartnership they were equal owners of the property of the firm, and were to share the profits and losses equally. Said personal mortgage was cancelled at the time this arrangement was made.

At that time it was agreed that the said firm should own the said

policies of insurance the same as they owned the property mentioned therein, but a transfer of the policies to that effect was thought to be unnecessary because of the manner in which the policies were made payable as aforesaid ; and for that reason no formal transfer has ever been made.    From that time to the present both members of said firm have understood that the firm and its members each had the same interest in the said policies as they had in the property insured thereby, and have so treated the same.    Said McCluer had not paid for said policies at the time of the formation of said firm, but subsequently paid for them, in part, if not wholly, from the funds of the firm.

On November 16, 1873, the property covered by said policies was destroyed and damaged to an amount much larger than the sums insured as aforesaid, and the said insurance companies are now ready and willing to pay the said sums in full.

Said firm continued till after said loss, and owned the property insured as aforesaid up to and at the time of the loss.    They became indebted to the plaintiffs in the action first above named, and to other parties on account of their partnership business, and to recover this indebtedness the actions aforesaid against them were brought.    Said McCluer, in his individual capacity, was indebted to said Ferry and others, and their actions against him were brought to recover this indebtedness.    The writ in the action of *Burbank & Son* v. *McCluer & Co.*, was first served upon the trustees, then the writ of one other partnership creditor, then the writs of said *Ferry* v. *McCluer* and of another individual creditor against McCluer, and then the writs of other partnership creditors.

Case reserved.

*Asa Fowler*, for the individual creditors of J. G. McCluer.

This case seems to present but a single question for consideration, and that is, whether one party to a written contract can change the terms of that contract entirely, without the assent and without any notice to the other party thereto, when the rights of third persons are thereby interfered with and prejudiced.

By the terms of the policies, which are agreed to be referred to as part of the case, each of the trustees " insures James G. McCluer in the sum of eight hundred dollars upon the property described in the policy," and " promises and agrees to make good to him, his executors, administrators, and assigns, the actual loss by fire on said property during the term of insurance, not exceeding the amount of the insurance."    Here, then, is an express written contract of each insurance company to pay James McCluer individually, his executors, administrators, or assigns, the sum of eight hundred dollars, there being no controversy about the loss of the property or its value.

Could McCluer, without an assignment of the policies, by any sort of agreement or understanding with his partner Livingston, change this contract into a promise of each company to pay eight hundred

dollars to J. G. McCluer & Co., to the prejudice of the rights of the individual creditors of McCluer, without the assent of the insurance companies, or any notice to them or either of them.

It seems very clear to our minds that it was beyond the power of McCluer to do any such thing. He procured the policies in his own name and upon his own credit, and upon the destruction of the property his creditors had the right to attach the debts due him from the companies. If he had died at the time of the fire, it is very clear that his administrator alone could have maintained an action to recover the money, and he alone could now maintain such an action. The fact that a portion of the premium was subsequently paid by the firm can in no way affect the character of the contract. It was merely a loan of the funds of the firm to pay the debt of McCluer. The understanding between McCluer and his partner, that the policies should belong to the firm, could not change the contract, or deprive McCluer's creditors of their rights to a fund belonging to him individually.

*Marshall & Chase,* for L. F. Burbank & Son, and other attaching creditors of McCluer & Co.

The question before the court is correctly stated in the first paragraph of the printed case. Since the case was agreed, both of the insurance companies (which are the trustees in all the actions aforesaid) have paid over the entire amounts of their respective policies, and the amounts so received have been deposited in a bank, by agreement of all parties interested, to await the decision of said question, it being agreed, however, that said insurance companies shall nominally continue parties to the actions, to give the court jurisdiction of the question. So it will be seen that the question, whether the companies are liable at all to any one upon the policies, does not arise. Practically, the question is reduced to simply this : Who is entitled to the money thus paid by the insurance companies,—the creditors of McCluer & Co., or those of McCluer individually ?

That it is partnership money, at least in equity, does not seem to admit of a doubt. The property for the loss of which it was paid was partnership property. At the time McCluer sold one half of said property to Livingston, and the partnership was formed rendering said property thereafterwards partnership property, it was agreed that the firm should own the policies of insurance the same as they did the property mentioned therein, and ever since then the policies have been regarded by both members of the firm as property of the firm. In fact, the premium that was paid to said companies for said policies was paid in part, if not wholly, from the partnership funds. The policies were not changed and made payable to the firm at the time the copartnership was formed, because it was thought to be unnecessary, as each partner was mentioned in the policies as originally written. They were written to McCluer, and made payable to Livingston as his interest might appear. If the parties were mistaken in the construc-

tion they gave to the policies, their mistake, which has not resulted to defeat the policies, certainly should not result to change the nature of the proceeds of the policies from partnership funds to individual funds, and give McCluer's individual creditors the whole of such fund to the exclusion of or in preference to the creditors of McCluer & Co., and thereby take from Livingston what both parties understood belonged to him, and what the money in which he had an interest (McCluer & Co.'s money) paid for.

McCluer's individual money did not pay for these policies; his means of paying his individual creditors was not diminished by their purchase. His individual creditors could not be misled by the form of them, and so give credit to him individually, upon the strength of them, that they would not otherwise have given. They must have known, if they possessed any information on the subject, that the property insured thereby was partnership property, which information would place them under obligation to inquire as to the ownership of the policies; and if they did thus inquire, they would ascertain that both partners understood that the policies belonged to the firm, and so treated them. On the other hand, McCluer & Co.'s money did pay for them, in part at least. Their creditors had every reason to believe that they belonged to the firm, and in case the partnership property was destroyed or damaged, that the firm would have the proceeds of the insurance with which to pay their firm debts. These facts would naturally lead them to give credit to the firm. Shall they be so construed as to render them the means of misleading such creditors, and placing them in a position where they will lose what they ventured by relying upon them? If the law forces this result, its unyielding rules are instruments of great injustice, not only to Livingston, but also to the creditors of McCluer & Co. Every equitable consideration is in favor of Livingston and of the partnership creditors.

The question here is presented to the court in such form that these equitable considerations will have weight, for the trustee process is an equitable proceeding. *Haven* v. *Wentworth*, 2 N. H. 95; *Boardman* v. *Cushing*, 12 N. H. 114; *Kaley* v. *Abbot*, 14 N. H. 362; *Leland* v. *Sabin*, 27 N. H. 84; *Clapp* v. *Rogers*, 38 N. H. 438; *Rand* v. *White Mountains Railroad*, 40 N. H. 87. At the time Livingston bought an interest in the property and the partnership was formed, " it was agreed that the said firm should own the said policies of insurance the same as they owned the property mentioned therein," that is, as partnership property. Their minds met in regard to this matter. This constituted an assignment of the policies to the firm; and if, after it, McCluer held the legal title to the policies, it was in trust for the benefit of the firm. The firm were the equitable owners of them. There is no legal objection to this assignment because it was not in writing. Such an assignment may be by parol. May on Ins., sec. 395; *Thompson* v. *Emery*, 27 N. H. 269; *Brewer* v. *Franklin Mills*, 42 N. H. 294; *Jordan* v. *Gillen*, 44 N. H. 424; *Sanders* v. *Insurance Co.*, 44 N. H. 239; *Pierce* v.

*Insurance Co.*, 50 N. H. 299,—and numerous authorities cited in said cases. Perhaps the insurers could have avoided the policies because of this assignment without notice to them, but McCluer or his creditors cannot. The provisions in the policies to this effect are for the benefit of the insurers, and of no one else. The reason for them is, that the insurers may know who is interested, as owner of the property, for its preservation, and decline to continue the risk if it is increased in consequence of the assignee being less careful or less competent than the assignor to have charge of it. May on Ins., secs. 377, 380, and 382; *Pierce* v. *Fire Ins. Co.* before cited. The provisions being for their benefit, they may waive them if they see fit; and they have done so in this case. Being waived, the contract in effect is as if the provisions had never been a part of it, and the assignee becomes entitled to the same benefits from it that the assignor would have had if their assignment had not been made. See authorities above cited.

In a trustee suit, where it appears that a debt due from a trustee to the defendant has been equitably assigned, the court will take cognizance of the assignment and protect the rights of the assignee. For, as the defendant has parted with his interest in the debt and can no longer maintain an action for it against the trustee for his own benefit, and as the plaintiff can acquire no greater interest in the debt than the defendant had at the time of the service of the trustee process, it results that the trustee cannot be charged for that which equitably he has ceased to owe the defendant and owes to another person. *Conway* v. *Cutting*, 51 N. H. 408; *Garland* v. *Harrington*, 51 N. H. 409.

It may be argued from *Conway* v. *Cutting*, that notice to the trustee of the assignment is necessary in order to protect the rights of all parties. We do not understand that case to go to this extent. To be sure, the court say " by such notice the rights of all parties are protected," and it may be desirable for this purpose, but, we maintain, not absolutely necessary. The court further say,—" Though the assignment, as between the parties to it, was complete and effectual from the moment it was made, and the assignor, if he should afterwards receive payment of the debt, would be obliged to pay the amount to the assignee, still the trustee was under no obligation to pay the assignee until notice received of the assignment." To all this we accede, and at the same time maintain that if it appears to the court, at the hearing upon the question whether the trustee shall be charged or not, that a *bona fide* and valid assignment of the contract, by virtue of which his indebtedness to the defendant arose, was made before the service of the trustee writ upon him, it would be the duty of the court to sustain such assignment although no notice of it had been given to the trustee. In such case, the rights of all parties would be protected. The plaintiff by his trustee process attaches only the money, goods, chattels, rights, and credits of the defendant in the hands of the trustee, and if such an assignment had been made, the defendant would afterwards have none such in the hands of the trustee. So the plaintiff cannot complain of want of notice to the trustee. If the trustee,

having no notice of the assignment, should make disclosure accordingly, and consequently be charged, it would be unjust to charge him again at the suit of the assignee, through whose fault in omitting to give notice he was charged in the first instance. So, for his protection, notice before disclosure seems necessary. But if it is given in season to appear in the disclosure, or upon an issue between the assignee claiming the funds and the plaintiff in the trustee action, the rights of all parties are preserved.

In this case the question arises between two classes of creditors (partnership and individual), both having attached the same funds. Of the assignment in question the individual creditors must have had notice, or had knowledge of such facts and circumstances as ought to have put them on inquiry, which last is equal to actual notice. *Jordan* v. *Gillen*, above cited; *Cameron* v. *Little*, 13 N. H. 26. The assignment, being *bona fide* and for a valuable consideration, will be protected against them. *Thompson* v. *Emery*, above cited, page 272, and numerous authorities there cited. The trustees will be protected in this case because all parties interested are in court, submitting to its jurisdiction, and agreeing as to the facts.

In marshalling these assets between the two classes of creditors, we therefore confidently claim that they shall be treated as partnership funds, and applied to the partnership debts.

Should it be claimed on the other side that McCluer, being an equal partner in the firm of McCluer & Co., is entitled to the benefit of one half of the money received upon these policies, and that such half may be held by his individual creditors by virtue of their attachments, we reply in the words of SHARSWOOD, J., in *Manhattan Insurance Co.* v. *Webster*, 59 Pa. St. 227, a case to which we ask the special attention of the court. He says,—" The interest of each partner in the assets of the firm is not a title to any aliquot part, as a half or a quarter. Each partner being liable *in solido* for the engagements of the partnership, has a right, which is termed his equity $*$ $*$ $*$ , to have the firm assets applied in the first instance to the payment of the firm debts—an equity through the instrumentality of which the partnership creditors have a priority over separate creditors to be paid out of the partnership funds. The interest of a partner is therefore only such a proportion of the capital and profits as by the original articles or agreement he may appear to be entitled to receive after all the debts are paid, and the affairs of the concern liquidated and wound up. It is plain, then, each partner has an insurable interest in the entire stock, and on receipt of a loss on insurance must account therefor to the partnership." That was a case where a policy was written in the name of one member of the firm, and was held valid. The decisions of our courts are to the same effect. *Newman* v. *Bean*, 21 N. H. 98 ; *Hill* v. *Wiggin*, 31 N. H. 301 ; *Treadwell* v. *Brown*, 43 N. H. 290 ; *Bowker* v. *Smith*, 48 N. H. 116 ; *Miles* v. *Pennock*, 50 N. H. 564.

*Isaiah S. Livingston, pro se.*

*Eastman, Page & Albin,* for the German Ins. Co.

The National Fire and Marine Ins. Co. were defaulted.

SARGENT, C. J.  This was the case of a policy issued to one person, McCluer, whose property was insured and with whom the contract was made, but made payable to another person, not according to the interests of each at the date of the policy, but as the interest of the payee might appear at the time of the loss, should one occur.  How, then, would this money be payable, at the time of the loss, according to the contract of the parties?  In this particular case there was no need of an assignment of the policy so long as no new party was introduced, and the only change was a change in the arrangement between the person insured and the payee.

What was the condition of the property at the time of the loss, and how must the money be paid?  Not all to McCluer, because Livingston's interest in the property still continued.  But it was not all payable to Livingston, because he did not at the time of the loss own it all alone.  He owned an undivided half of the whole, but in partnership with McCluer, so that it would not be paying according to Livingston's interest in the property at that time to pay half to him and the other half to McCluer, because his interest in the property was not a divided interest, a sole interest in any part of the property, but an undivided interest in the whole,—an interest that was not and could not be divided and separated from McCluer's interest in the whole, but an interest that must continue undivided and in the whole, so long as the same arrangement continued.

The money could only be paid, then, according to the terms of the policy, to the firm, or to Livingston as one of the firm and for the benefit of the firm.  By an arrangement between the parties, the property insured had become partnership property, and remained so, and the only way that the insurance could be paid to either of them according as his interest might appear, would be to pay it all to the firm, or all to one or the other of the partners, for and on behalf of the firm.

It would be equitable to pay this money to the firm for the property insured, for the loss for which it was to be paid belonged to the firm.  Equitably, the money belonged to the firm; and, as we have seen, if it were paid according to the literal terms of the contract, then it must also be paid to the firm, so that both equitably and legally the money belonged to the firm, just as the goods burned did before the fire; and not only so, but the policy was by its terms payable to the firm, or to one partner representing the firm and on its behalf.  Why, then, should not the money go where the property belonged, and where, by the terms of the contract for payment, it must be paid, viz., to one of them for the benefit of both jointly?

The trade between the parties, whether in writing or not, was such as transferred the property to the firm.  An assignment of chattels may be by parol as well as by writing.  Any trade that conveys the

right and interest, or changes the ownership in the property, is an assignment *pro tanto* of the property itself, because it was in their possession before, and that could not and would not be changed unless one sold out his whole interest in it to a third person; then there would need to be a change of possession. The fact that here were trustee processes served before the money was paid could not change the ownership of the money, but it will be held on the trustee process, just according to the equitable title, the real ownership of it, at the time the process was served. The authorities cited sustain the same view.

The creditors of the firm hold the funds of the firm to pay their debts in preference to the individual creditors of either partner, whether their attachments are first or not, until the partnership debts are paid.

*Case discharged.*